THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARISA SPOONER-LEDUFF,<br><br>Plaintiff,<br><br>v.<br><br>SUNTRUST MORTGAGE, INC.,<br><br>Defendant. | CASE NO. C14-1471-JCC<br><br>ORDER GRANTING MOTION FOR<br>SUMMARY JUDGMENT |

This matter comes before the Court on Defendant SunTrust Mortgage, Inc.'s motion for summary judgment (Dkt. No. 23). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

## I.   BACKGROUND

In 2006, Plaintiff[1] obtained a construction-to-permanent-tear-down loan from Defendant. (Dkt. No. 30 at 1.) The security for this loan was a single family home that Plaintiff purchased with the intent to demolish the home, rebuild two single family residences in the lot, and sell them for profit. (Dkt. No. 30 at 1; Dkt. No. 25, Ex. 1 at 6.)

---

[1] Eleanor Mitchell was also a party to the loan agreement. (Dkt. No. 30 at 1.) However, Ms. Mitchell is not a party to this lawsuit. Thus, any reference to Plaintiff refers only to Marisa Spooner-LeDuff.

1    Defendant's loan officer verbally informed Plaintiff that she would be able to sell the two

2    properties separately and that Defendant would release the deed of trust lien on each parcel that

3    sold separately. (Dkt. No. 30 at 2; Dkt. No. 29 at 2.) However, nothing in any of the written loan

4    documents allowed for splitting the loan or selling the properties separately. (*See* Dkt. No. 25,

5    Ex. 1 at 37-42, 47-54; Dkt. No. 25, Ex. 2 at 2-13, 15, 17-20, 22-27, 29-40, 42-56.) Among the

6    loan documents executed by the parties were (1) a single 30-year promissory note in the

7    principal amount of $908,000 and (2) a deed of trust. (Dkt. No. 25, Ex. 1 at 37, Ex. 2 at 42.) The

8    deed of trust defined "Loan" as "the debt evidenced by the Note, plus interest, any prepayment

9    charges and late charges due under the Note, and all sums due under this Security Instrument,

10   plus interest." (Dkt. No. 25, Ex. 2 at 43.) The deed of trust defined "Property" as the entire

11   parcel, which had not yet been subdivided. (Dkt. No. 25, Ex. 2 at 44.) The deed of trust provided

12   that the property would be reconveyed to Plaintiff "[u]pon payment of all sums secured by this

13   Security Instrument." (Dkt. No. 25, Ex. 2 at 55.)

14       In early 2009, Plaintiff received an offer on one of the new homes in the amount of

15   approximately $604,000. (Dkt. No. 25, Ex. 1 at 31.) When she contacted Defendant about the

16   offer, Defendant informed her that the loan was a single loan and that Defendant would not

17   partially release the property if the sale proceeds would not pay off the loan in full. (*See* Dkt. No.

18   25, Ex. 1 at 32.) Defendant similarly rejected subsequent offers below the loan amount. (*See,*

19   *e.g.*, Dkt. No. 25, Ex. 3 at 11, 27, 47.)

20       Plaintiff ceased making payments on the loan in July 2009. (Dkt. No. 24 at 1.) Defendant

21   ultimately held a foreclosure sale on the property on October 2, 2013. (Dkt. No. 24 at 2.) The

22   winning bid was made by a third party for $791,000. (Dkt. No. 24 at 2.)

23       On August 27, 2014, Plaintiff sued Defendant, alleging breach of contract and violation

24   of the Washington Consumer Protection Act (WCPA). (Dkt. No. 1, Ex. 2 at 1, 4.) Defendant now

25   moves for summary judgment dismissal of all claims. (Dkt. No. 23.)

26

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT
PAGE - 2

1  II.    DISCUSSION

2        A.    Summary Judgment Standard

3        Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant

4  summary judgment if the movant shows that there is no genuine dispute as to any material fact

5  and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such

6  a determination, the Court must view the facts and justifiable inferences to be drawn there from

7  in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

8  242, 255 (1986). Once a motion for summary judgment is properly made and supported, the

9  opposing party "must come forward with 'specific facts showing that there is a *genuine issue for*

10  *trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting

11  Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a

12  dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to

13  return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248-49. Conclusory, non-

14  specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed."

15  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990). Ultimately, summary

16  judgment is appropriate against a party who "fails to make a showing sufficient to establish the

17  existence of an element essential to that party's case, and on which that party will bear the

18  burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

19        B.    Analysis

20            1.   Breach of Contract Claim

21        Plaintiff's breach of contract claim is based on two theories: (1) that Defendant failed to

22  allow Plaintiff to sell the homes separately and (2) that Defendant failed to automatically convert

23  her loan terms to permanent financing. (*See* Dkt. No. 1, Ex. 2 at 4; Dkt. No. 27 at 12.)

24        Turning first to Plaintiff's separate sale argument, Plaintiff admits that none of the written

25  loan documents provide for the ability to split the loan. (*See* Dkt. No. 25, Ex. 1 at 13, 15-16.)

26  Instead, Plaintiff bases her argument on the verbal understanding she had with Defendant's loan

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT
PAGE - 3

officer that she would be able to split the loan and sell the properties individually. (*See* Dkt. No. 27 at 1-2; Dkt. No. 30 at 2; Dkt. No. 29 at 2.)

 Revised Code of Washington § 19.36.110 provides:

> A credit agreement is not enforceable against the creditor unless the agreement is in writing and signed by the creditor. The rights and obligations of the parties to a credit agreement shall be determined solely from the written agreement, and any prior or contemporaneous oral agreements between the parties are superseded by, merged into, and may not vary the credit agreement. Partial performance of a credit agreement does not remove the agreement from the operation of this section.

This provision explicitly preempts Plaintiff's argument regarding the verbal agreement.

Plaintiff cites *Klinke v. Famous Recipe Fried Chicken, Inc.*, which states that a "party who promises, implicitly or explicitly, to make a memorandum of a contract in order to satisfy the statute of frauds, and then breaks that promise, is estopped to interpose the statute as a defense to the enforcement of the contract by another who relied on it to his detriment." 616 P.2d 644 (Wash. 1980) (internal quotations omitted). However, *Klinke* addressed the general statute of frauds, Revised Code of Washington § 19.36.010. *See* 616 P.2d 646 n.1. By contrast, the present case implicates § 19.36.110, specifically involving credit agreements. The Washington Court of Appeals recently rejected estoppel as a defense to the credit agreement statute of frauds. *Cowlitz Bank v. Leonard*, 254 P.3d 194, 195 (Wash. App. Ct. 2011). Plaintiff also asserts that her part performance removed the contract from the statute of frauds. (Dkt. No. 27 at 10.) But, this argument is explicitly rejected in § 19.36.110, which states: "Partial performance of a credit agreement does not remove the agreement from the operation of this section." Plaintiff thus cannot maintain a breach of contract claim based on verbal promises made to her involving the credit agreement.

Second, Plaintiff argues that Defendant breached their contract by failing to automatically convert her construction loan to permanent financing. (Dkt. No. 27 at 12.) However, to the extent Plaintiff identifies any significance of this alleged failure, it actually stems from her inability to

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT
PAGE - 4

sell the properties separately. (*See, e.g.*, Dkt. No. 27 at 12; Dkt. No. 30 at 6-8.) Thus, this argument seems to be a repackaging of her verbal contract argument, which is barred by the credit agreement statute of frauds.

The Court recognizes that Plaintiff's situation is unfortunate, given that Defendant's agent verbally indicated that Plaintiff's plan to sell the properties separately was within the terms of their contract. However, the Washington State legislature has spoken as to the legal status of verbal credit agreements, and the Washington courts have interpreted this status as steadfast in the face of equitable claims. It is not this Court's place to reinterpret this clear provision.

Defendant's motion for summary judgment dismissal of Plaintiff's breach of contract claim is GRANTED.

### 2. WCPA Claim

Plaintiff also brings a claim under the WCPA, alleging that Defendant misled Plaintiff as to her ability to obtain permanent financing. (Dkt. No. 1, Ex. 2 at 4.) Defendant responds that this claim is likewise subject to the credit agreement statute of frauds, which applies to all "rights and obligations of the parties." (Dkt. No. 23 at 14.)

Defendant cites *Key Bank of Washington v. Concepcion*, 1994 WL 762157 (W.D. Wash. 1994), wherein the borrowers asserted that the bank broke verbal promises to extend their credit agreement, constituting breach of contract, misrepresentation, and tortuous interference. *Id.* at *3. This Court held that Plaintiff's tort claims were "actually an attempt to enforce alleged [verbal] promises" in violation of § 19.36.110. *Id.* at *4. Thus, *Key Bank* stands for the proposition that breach of contract claims based on verbal credit agreements cannot survive merely because they are repackaged under a different cause of action.

By contrast, in *Robinett v. Opus Bank*, 987 F.Supp.2d 1099, 1104 (W.D. Wash. 2013), this Court declined to apply the credit agreement statute of frauds to the borrower's claims of misrepresentation. Specifically, the borrowers alleged that the bank misrepresented that their lending relationship would continue, concealing the fact that the bank had no intention of

1    remaining in the real estate development loan business. *Id.* The Court reasoned that the promises

2    were "not contractual promises (or 'oral agreements to loans money, extend credit, [or] forbear

3    from enforcing repayment'), but instead [we]re representations (upon which Plaintiffs allegedly

4    relied) that a business relationship will continue." *Id.* Thus, *Robinett* stands for the proposition

5    that non-contractual verbal promises may survive the credit agreement statute of frauds.

6           Such is not the case here, however. Plaintiff asserts that Defendant committed

7    misrepresentation by "fail[ing] to put in place previously agreed permanent financing." (Dkt. No.

8    1, Ex. 2 at 4.) In other words, she attempts to enforce a verbal credit agreement by refashioning

9    her claim under the WCPA. Her claim is analogous to the claims in *Key Bank* and barred under

10   § 19.36.110. Defendant's motion for summary judgment dismissal of Plaintiff's WCPA claim is

11   GRANTED.

**III.   CONCLUSION**

13          For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 23) is

14   GRANTED. Plaintiff's claims are DISMISSED with prejudice.

15          DATED this 20 day of October 2015.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT
PAGE - 6